# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:18-cv-14-KDB
### (5:15-cr-15-KDB-DCK-3)

| | |
|---|---|
| DAVID LYNN BROWNING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner was charged along with two co-defendants in a child pornography conspiracy. The charges pertaining to Petitioner are: Count (1), engaging in a child exploitation enterprise (18 U.S.C. § 2252A(g)); Count (2), conspiracy to advertise child pornography (18 U.S.C. § 2251(d), (e)); Count (3), advertising child pornography (18 U.S.C. § 2251(d)); and Counts (11)-(13) transporting child pornography (18 U.S.C. § 2252A(a)(1)). (5:15-cr-15 (CR), Doc. No. 31).

Petitioner agreed to plead guilty to Count (1) in exchange for the Government's dismissal of the remaining counts. The parties entered into a written Plea Agreement that provides that Petitioner was pleading guilty to Count (1) and that he is guilty of that offense. (CR Doc. No. 52 at 1). The Plea Agreement sets forth Petitioner's sentencing exposure of a minimum term of 20 years' imprisonment and a maximum term of life, a $250,000 fine, or both, and supervised release for a minimum of five years and a maximum of life. (CR Doc. No. 52 at 2). The Plea Agreement states that Petitioner was aware that the Court will consider the U.S. Sentencing Guidelines in

1

determining the sentence, the sentence had not yet been determined, any estimate of the likely sentence was a prediction rather than a promise, the Court would have the final discretion to impose any sentence up to the statutory maximum, the Court was not bound by any recommendations or agreements by the United States, and Petitioner may not withdraw the plea as a result of the sentence imposed. (Id.). The parties agreed to jointly recommend: a base offense level of 35 pursuant to U.S.S.G. § 2G2.6(a); a four-level enhancement pursuant to § 2G2.6(b)(1)(A) because the material involved a victim under 12 years of age; a two-level enhancement pursuant to § 2G2.6(b)(4) because a computer or interactive computer service was used in furtherance of the offense; and a two-level enhancement pursuant to § 3B1.1(c) for Petitioner's role in the offense. (Id.). The United States agreed that the plea was timely for purposes of § 3E1.1(b), if applicable. (Id.). The United States reserved the right to argue in favor of any other enhancements or reductions, and either party could seek a departure or variance from the applicable guideline range. (Id.). Petitioner agreed to register as a sex offender and acknowledged that the Sex Offender Registration and Notification Act would apply. (CR Doc. No. 52 at 3). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (CR Doc. No. 52 at 5). The Plea Agreement contains an express waiver of Petitioner's appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 52 at 6). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis for the guilty plea, that he read and understood the Factual Basis attached to the Plea Agreement, and that such Factual Basis could be used by the Court and U.S. Probation Office without objection to determine the

applicable guideline range or sentence, except for any objections reserved in the Factual Basis. (CR Doc. No. 52 at 5).

The Factual Basis provides that Petitioner and his two co-defendants operated a website "dedicated to the advertising and distribution of child pornography…." (CR Doc. No. 53 at 1). Petitioner was a "Global Moderator" of the website and, as such, was heavily involved in its day to day operations. (CR Doc. No. 53 at 2). Petitioner spent more than 700 hours logged onto the website, made over 1,000 posts, sent over 140 messages, received over 180 private messages, and made many posts that contained child pornography. (CR Doc. No. 53 at 3). According to the National Center for Missing and Exploited Children, the images and videos distributed via the website included at least 283 identified child victims. (CR Doc. No. 53 at 4). The website contained a total of 117,773 posts, 10,622 total topics, 214,898 user accounts, and approximately 50,000 images and videos of child pornography were distributed. (Id.). A federal search warrant was executed at Petitioner's residence and Petitioner was interviewed. Petitioner told agents that he had sexual interest in girls age seven to 12, that he spent four or five hours per day performing moderator duties on the website, and that he created a logo for the website. (CR Doc. No. 53 at 5). The Factual Basis contains handwritten notations that: "the ability to operate and control the website(s) varied amongst the individual defendants;" "[w]hile [Petitioner] admits his role as moderator, the specific application of the term 'administrator' at this time is in question and subject to specification;" and a general objection that, "[w]hile [Petitioner] does not dispute his general culpability, the specific facts and frequency of events and postings is difficult to ascertain by the defense considering the sensitive nature of the discovery and the access available." (CR Doc. No. 53 at 1, 5).

3

A Rule 11 hearing came before Magistrate Judge David S. Cayer on December 18, 2015. (CR Doc. No. 55). Petitioner stated under oath that he understood the charges against him and the consequences of his guilty plea including the maximum and minimum penalties he faced. (CR Doc. No. 55 at 1-2). Petitioner confirmed that he spoke to counsel about how the U.S. Sentencing Guidelines may apply to his case, that the sentence had not yet been determined and the guidelines have not yet been calculated, and that he may receive a sentenced higher or lower than called for by the guidelines. (CR Doc. No. 55 at 2). Petitioner acknowledged the rights he was waiving by pleading guilty including the right to be represented by a lawyer, the presumption of innocence, the right to not testify at trial, and the Government's burden of proof. (CR Doc. No. 55 at 2-3). Petitioner admitted his guilt of the offense charged in Count (1). (CR Doc. No. 55 at 3). The prosecutor summarized the terms of the Plea Agreement in open court including Petitioner's appellate and post-conviction waivers. (Id.). Petitioner stated that he understood the Plea Agreement and confirmed that he was pleading guilty without any threats, intimidation, or promises other than the terms of the Plea Agreement. (Id.). Petitioner further stated that he read and understood the Factual Basis and agreed with it. (Id.). Petitioner agreed that he had enough time to discuss with his lawyer any possible defenses he may have to the charge and that he was satisfied with the services of his attorney. (Id.).

The Presentence Investigation Report (PSR) calculated the base offense level as 35 for a violation of 18 U.S.C. § 2252A(g). (CR Doc. No. 68 at ¶ 26). Four levels were added because the material involved a victim who had not attained the age of 12; two levels were added because a computer or interactive computer service was used in furtherance of the offense; and two levels were added because Petitioner was an organizer, leaver, manager, or supervisor in a criminal activity. (CR Doc. No. 68 at ¶¶ 27, 28, 30). Three levels were deducted for acceptance of

responsibility, resulting in a total offense level of 40. (CR Doc. No. 68 at ¶¶ 34-36). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 68 at ¶¶ 45-46). This resulted in an advisory guideline range of 292 to 365 months' imprisonment and a term of supervised release between five years and life. (CR Doc. No. 68 at ¶¶ 68, 71).

Prior to sentencing, the Government filed a Motion seeking to reduce Petitioner's guideline range, and for sentencing at the statutory mandatory minimum of 240 months' imprisonment.[1] (CR Doc. No. 109). Defense counsel filed a Sentencing Memorandum arguing that Petitioner should receive a sentence below the 240-month statutory minimum. (CR Doc. No. 122).

At the sentencing hearing before Judge Richard L. Voorhees, Petitioner stated in open court that he had voluntarily pleaded guilty to Count (1) with an understanding of the nature of the offense and the possible penalties. (CR Doc. No. 201 at 2-3). Petitioner admitted he was guilty of Count (1) and he told the Court that he was fully satisfied with counsel's services. (Id.). The following then transpired:

> HONORABLE JUDGE VOORHEES: Do you have a copy of your presentence report there at counsel table?
>
> THE DEFENDANT: Yes, sir.
>
> HONORABLE JUDGE VOORHEES: And have you gone over that carefully with your attorney and discussed it with him in detail?
>
> THE DEFENDANT: I have.

---

[1] ███████████████████████████████████████████████████████████████ [redacted]

(CR Doc. 201 at 3-4).

The Court adopted the PSR's sentencing calculation including the advisory guideline range of 292 to 365 months' imprisonment. (CR Doc. No. 201 at 4); (CR Doc. No. 124). The Government recommended a sentence at the statutory minimum of 240 months' imprisonment. Defense counsel argued that a greater reduction should apply but ultimately agreed that Petitioner should be sentenced to the 240-month minimum that is required by statute. (CR Doc. No. 201 at 5-12).

In a Judgment entered on February 8, 2017, the Court sentenced Petitioner to the statutory minimum of 240 months' imprisonment followed by a life term of supervised release. (CR Doc. No. 123). The Amended Judgment, which added $70,000 in restitution, was entered on September 8, 2017. (CR Doc. No. 170). Petitioner did not file a notice of appeal.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on January 18, 2018.[2] He argues that counsel was ineffective: (1) with regards to the guilty plea; (2) for failing to provide adequate representation with regards to sentencing; and (3) with regards to a notice of appeal.

The Government filed a Response, (Doc. No. 4), arguing that Petitioner's claims of ineffective assistance of counsel are meritless.

Petitioner did not reply.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).
6

collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Further, knowing and voluntary appellate and post-conviction waivers are generally enforceable. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005).

The record reveals that Petitioner's guilty plea was knowingly and voluntarily entered with full knowledge of all of its consequences. Magistrate Judge Cayer conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including his sentencing exposure and the waiver of his

7

appellate and post-conviction rights. Petitioner stated that he was pleading guilty because he was guilty of Count (1), that he had fully discussed any possible defenses with counsel, and that he was satisfied with counsel's services.

Petitioner appears to argue that counsel provided deficient performance which affected the voluntariness of his guilty plea. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he

8

would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

With regards to counsel's pre-plea performance, Petitioner contends that counsel failed to adequately investigate the facts and evidence in the case and communicate with him. These claims are refuted by the record and were waived by Petitioner's knowing and voluntary guilty plea. Petitioner admitted that he was guilty of Count (1), that he understood the charges, that he discussed the case and any possible defenses with counsel, and that he was satisfied with counsel's services. Petitioner's conclusory and self-serving contentions to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). Further, Petitioner fails to explain how any additional investigation or communication by counsel would have benefitted him in any way. Petitioner's knowing and voluntary guilty plea excused counsel from further investigating the case. See Willis, 992 F.2d at 490.

Petitioner further suggests that counsel misadvised him about his sentencing exposure by telling him that he may receive a sentence of between 10 and 11 years in prison. This contention is conclusively refuted by the record. The Plea Agreement sets forth Petitioner's sentencing exposure including the 240-month statutory mandatory minimum sentence, states that the Court would not be bound by parties' recommendations and may impose a sentence up to the statutory maximum, and states that any sentencing estimate was a prediction and not a promise. Assuming

9

*arguendo* that counsel told Petitioner that his sentence may be 10 or 11 years, Petitioner disavowed any reliance on that estimate by entering into the Plea Agreement and stating in open court that he understood that any estimates were not binding.

Petitioner's allegation that counsel pressured him to quickly accept the plea offer is also conclusively refuted by the record. Petitioner stated during the Rule 11 hearing that he was pleading guilty freely and voluntarily, that he had adequate time to discuss the case with counsel, and that he was not threatened, intimidated, or forced to plead guilty. Moreover, assuming that counsel told Petitioner that it was in his best interest to accept the plea offer swiftly, Petitioner has failed to explain how that advice was deficient.

Moreover, Petitioner's allegation that counsel's pre-plea performance rendered his plea involuntary is facially insufficient because he has not demonstrated prejudice. Petitioner fails to allege that he would not have pleaded guilty but for counsel's allegedly deficient performance; he seeks only sentencing relief. Further, it would not have been objectively reasonable for Petitioner to proceed to trial but for counsel's allegedly deficient performance. The Plea Agreement was highly favorable to Petitioner in that it resulted in the dismissal of five serious charges, a three-level deduction for acceptance of responsibility, and imposition of a sentence 52 months below the bottom of the advisory guideline range. Petitioner's suggestion that counsel should have negotiated a more favorable plea offer is purely speculative. Petitioner has failed to point to any facts demonstrating that, but for counsel's allegedly deficient performance, a more favorable plea offer would have been made by the Government and accepted by the Court. See generally Lafler, 566 U.S. at 164. Therefore, Petitioner's claims of ineffective assistance regarding his guilty plea will be denied.

Next, Petitioner alleges that counsel was ineffective with regards to sentencing. When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

Petitioner alleges that counsel failed to timely provide him with a copy of the PSR or adequately discuss the PSR with him, and for failing to secure a lower sentence. Petitioner's claim that counsel failed to provide him with, and discuss, the PSR is conclusively refuted by the record. Petitioner stated in open court at the sentencing hearing that he had a copy of the PSR, reviewed it carefully with counsel, and discussed it fully with him. His present self-serving claims to the contrary will be rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221. Further, Petitioner has failed to demonstrate prejudice because he does not allege that seeing the PSR sooner or discussing it earlier or additionally with counsel affected the sentence in any way.

Petitioner's suggestion that counsel should have achieved a lower sentence is completely conclusory and unsupported by the record. Petitioner's advisory guideline range was between 292 to 365 months' imprisonment. Counsel achieved a sentence at the statutory minimum of 240 months' imprisonment, which is 52 months below the end of the advisory guideline range. Although counsel argued at the sentencing hearing that a sentence below the statutory minimum would be appropriate, such was impossible to achieve without a motion by the Government which was not forthcoming. Counsel cannot be deemed ineffective for achieving the lowest sentence permitted by law. Petitioner has failed to identify anything that reasonable counsel could have done to further lower the sentence.

Finally, Petitioner complains that counsel was ineffective with regards to a direct appeal. Strickland applies in the context of appellate representation. Counsel must file a notice of appeal when instructed by his client to do so. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if a

11

client does not expressly request an appeal, counsel must confer with the client about an appeal when a rational defendant would want to appeal or the client expresses an interest in appealing. United States v. Cooper, 617 F.3d 307 (4th Cir. 2010). Dereliction of either of these duties constitutes deficient performance. See Flores-Ortega, 528 U.S. 477, 480; Cooper, 617 F.3d at 313. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed an appeal "but for" counsel's failure to file or consult. Flores-Ortega, 528 U.S. 484.

Petitioner alleges that he was informed at sentencing that he had 14 days to appeal and, after the sentencing hearing, counsel "asked [him] if [he] indeed understood the issue of the direct appeal." (Doc. No. 1-1 at 14). Petitioner told counsel that he understood the 14-day deadline but that he "did not understand the basis of that appeal as [Petitioner] assumed that by singing a plea deal, all of [his] appeal options had been taken from [him]." (Id.). Counsel told Petitioner that he would come back to see Petitioner and "explain it to [him]" but Petitioner never saw counsel again. (Id.). Petitioner "did not file a notice on [his] own and [Petitioner is] not aware that any notice was filed on [his] behalf by [counsel]." (Id.).

Petitioner does not allege that he asked counsel to file a notice of appeal on his behalf or that he expressed an interest in appealing. At most, Petitioner told counsel that he was confused about the effect of his appellate waiver which counsel failed to clarify. Nor would a rational defendant have wanted to appeal under the circumstances. Petitioner's extremely favorable Plea Agreement resulted in the dismissal of five serious charges and sentencing well below the advisory guideline range to the minimum sentence allowed by statute. Petitioner has failed to come forward with any issues that he would have wanted to raise on appeal and none are apparent on the record. No reasonable defendant would have wanted to appeal under these circumstances. Petitioner cannot demonstrate prejudice because he has failed to demonstrate a reasonable probability that

12

he would have appealed but for counsel's allegedly deficient performance. Accordingly, Petitioner's claim that counsel was somehow ineffective with regards to an appeal will be denied.

Petitioner's claims of ineffective assistance are conclusively refuted by the record, and are insufficient to support relief. Therefore, the Motion to Vacate will be denied.

The Court notes that footnote 1 of this Order refers to sealed portions of the criminal record. The Clerk will therefore be instructed to redact footnote 1 from any version of this Order that will be available to the public.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. The Clerk is instructed to **REDACT** footnote 1 of this Order, which refers to sealed portions of the criminal record, from any version of this Order that is available to the public.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

13

Case 5:15-cr-00015-KDB-DCK   Document 214   Filed 10/27/20   Page 13 of 14

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

*signature*

Kenneth D. Bell
United States District Judge